## SUPREME COURT.

### Gooding agt. M'Alister.

Under the Code, a *demurrer* will in no case lie for *duplicity;* and the only mode for a party to avail himself of such objection is by motion to *strike out* or compel the party to *elect.*

That is, several causes of action, which by § 167 may be united in the same complaint, although contained in one count or statement—*not separately stated,* cannot be *demurred* to. (*This is adverse to the case of Durkey agt. The Saratoga and Washington R. R. Co.,* 4 *How. Pr. R.* 226.)

Where the plaintiff in the first count or statement in the complaint claimed to have a written contract reformed, on the ground that a material part of the agreement had been by mistake omitted; and that when so reformed and made to express the agreement intended by the parties to it, to have it enforced against the defendant, and that the plaintiff recover a certain sum so due him upon said contract, with interest, *held,* on demurrer, that it presented a case of equity jurisdiction exclusively, and did in fact contain but *one cause of action.*

*Ontario Special Term, May,* 1853. Demurrer to first count or statement of cause of action of complaint.

The complaint states, that on or about the 19th day of October, 1850, the plaintiff and defendant made an agreement or memorandum in writing in the following words :—

" In consideration of the agreement herein contained on the part of John M'Alister of Waterloo, I do hereby agree to deliver to said M'Alister, at the freight depot of the Rochester and Syracuse Railroad, in the village of Canandaigua, all the sheep pelts that shall be taken off at any slaughtering establishment in Bristol, Ontario county, from my own sheep, in the months of November, and December, and January next, and the last four days of October instant, in good merchantable order, said pelts to be taken from good slaughtering sheep, ewes and wethers, not to exceed ten lambs in each hundred— said M'Alister agrees to take and receive one thousand of said pelts per week, green.

" Said M'Alister agrees to pay to said Asahel Gooding for each and every of said pelts so delivered, the sum of eighty-three cents on delivery, except the lambs' pelts, for which said M'Alister agrees to pay seventy-one and a half cents each, on delivery.

" It is mutually understood that the whole number of pelts to be delivered under this contract shall be from fifteen to twenty thousand, and that not over two thousand pelts per week shall be taken off, unless the weather is such as to render it proper to slaughter them sooner and faster than at that rate.

" Witness our hands, the 19th day of October, 1850.

(Signed,)    " ASAHEL GOODING,

" JOHN M'ALISTER, by

" JOHN STOUT, Agent."

The complaint further states, that at the time of making said agreement or memorandum, and before reducing the same to writing, it was expressly agreed and understood between the parties, that the plaintiff reserved, and should have the right to

retain for his own use the pelts of a certain lot of about one thousand sheep, known and distinguished as the Sisson sheep, and that the plaintiff was under no circumstances liable to deliver the pelts of said lot of sheep, or any portion of the same, upon said contract; and the parties have both acted upon the faith of that agreement, except as hereinafter stated.

The complaint further states, that a portion of said agreement in writing was drawn by the defendant at Waterloo, in the county of Seneca, and a portion at Canandaigua, in Ontario county, and the same was executed at the latter place ; that the agreement was made in behalf of the defendant by one James R. Webster, as his agent, and the said John Stout was authorized by the defendant to fill up and execute the same on his part, and at the time of the execution of said memorandum, both said Webster and said Stout were present acting in behalf of the defendant. That said memorandum, as the plaintiff supposed and believed, at the time he executed the same, contained the reservation and exception of the pelts from said lot of sheep aforesaid, and plaintiff never learned the contrary thereof to be true until after the time of the completion of said agreement had expired. That in pursuance of said agreement, supposing and believing it contained the said exception, the plaintiff went on, from time to time, delivering pelts as therein provided, and in all delivered fifteen thousand one hundred and eight sheep pelts, and seven hundred and forty-seven lambs' pelts, amounting at the prices fixed by said contract to the sum of $13,073,54, that the same were delivered in pursuance of and according to the requirements of said contract. That the parties both acted upon the belief that said reservation was inserted in said agreement, and frequently during the period of said delivery conversed about said reservation as being part of said contract and contained therein, and the plaintiff has in all respects complied therewith on his part. That the said memorandum was completed in haste, late in the evening of the day it bears date, and that the omission to insert said exception and reservation was purely inadvertent and by mistake on the part of the plaintiff and defendant's agents, and the person who completed the draft

of the memorandum.  That the defendant, though he has re-
ceived the pelts so delivered upon said contract as aforesaid,
and has converted the same to his own use, has neglected and
refused to pay the plaintiff therefor, &c., and that there is due
the plaintiff over and above all payments, &c., the sum of
$1,573,54, with interest, &c.  That the defendant, contrary to
the express understanding and agreement aforesaid, and taking
advantage of the omission, &c., withholds the sum justly due
the plaintiff as aforesaid, upon the unjust and unfounded pre-
tence that the plaintiff has violated his agreement by not de-
livering the pelts from said one thousand sheep, reserved and
excepted as aforesaid, and is seeking to take advantage of the
omission to insert said reservation or exception in said agree-
ment, and thereby to deprive the plaintiff of the sum justly due
him as aforesaid, and has refused, though called upon by the
plaintiff so to do, to reform the said agreement in writing by
inserting said reservation therein, and conforming the same to
the agreement actually made between the parties, &c.

The complaint then, as a further cause of action, states the
sale and delivery by the plaintiff to the defendant, on the 13th
October, 1850, and on divers days between that day and the 6th
January, 1851, of divers quantities of sheep pelts, amounting in
all to the number of fifteen thousand eight hundred and fifty-
five, of the value of $13,073,54, and that defendant is still
indebted therefor in the sum of $1,573,54, and interest,
&c., which the defendant, though requested, refuses to
pay, &c.

The complaint then concludes as follows: " The plaintiff
therefore demands the relief appropriate to the case, and asks
a decree or judgment for a reformation and change of the said
memorandum of the agreement made between the parties, by
inserting therein the reservation and exception omitted as afore-
said, and by correcting the said mistake therein, and also that
the plaintiff recover the sum so due him upon the said contract,
and for pelts so sold and delivered as aforesaid, with interest as
aforesaid, and for such further and other judgment and relief as
shall be deemed appropriate, &c."

The defendant demurred to the first count or statement of cause of action, assigning special causes of demurrer.

A. T. KNOX, *for Defendant.*
E. G. LAPHAM, *for Plaintiff.*

WELLES, Justice. The complaint contains two counts or statements of causes of action, and the demurrer is to the one first stated and set forth. The demurrer must, therefore, be examined and decided the same as if there was no other count than that to which it refers. The objection alleged to this count is that it contains two distinct causes of action, the one equitable and the other legal. If this were so, I do not think a demurrer will reach the objection. If a plaintiff in an attempt to present a single and entire cause of action in one count or statement, misjudges, and in fact spreads out two or more good causes of action, when he supposed he had, and only claimed one, in my opinion the most simple and appropriate way for the defendant to take advantage of it is, to move to have all but one struck out of the complaint as redundant. On such motion, the court would not grant the motion to strike out unless it appeared entirely clear that the count did in fact contain more than one good and complete cause of action, and would probably in that case, upon such terms as should be just, allow the plaintiff to amend by severing the statements so as to appear in form, to contain the different causes of action in conformity with the principles stated in the opinion of Justice SELDEN, in Benedict agt. Seymour, (6 *How. Pr. R.* 298,) to which I fully subscribe.

The defendant's counsel insists that the Code (§ 144, *sub.* 5) allows a demurrer for such cause. That section enumerates six causes for which a defendant may demur to the complaint, and the 5th is, " That several causes of action have been improperly united." Section 167 shows what causes of action may be united in the same complaint, and those that may be so united are required to be separately stated. Suppose, in a case where several causes of action are united in one complaint, and they are such as the section last referred to allows to be

united in the same complaint, but they are not separately stated ; would such omission subject the complaint to a demur-- rer? The causes of action thus stated are properly united in the complaint, and the only difficulty is, they are not separately stated. The objection which subdivision 5 of § 144 allows to be taken by demurrer, it seems to me, must be something which amounts to a violation of § 167, providing what causes of action may be united *in the same complaint*. Subdivision 5 of § 144 allows a demurrer, where several causes of action are impro- perly united. That several such causes which may be so united, are not separately stated, is not among the objections for which, by the last-mentioned section, the defendant may demur.

In Durkey and others agt. The Saratoga and Washington R. R. Co. (4 *How. Pr. R.* 226,) Mr. Justice WILLARD adopted a different construction of § 144, holding that the language of subdivision 5 of that section referred to causes of action im- properly united in the same count or statement. He rests the argument principally upon the concluding words of § 167, *" and must be separately stated."* He seems to me to have lost sight of the language in the former part of the section, which allows the plaintiff to unite *in the same complaint* several causes of action. Several causes of action may be united in one com- plaint, and although not separately stated, still, they are pro- perly united *in the complaint*. That is to say, it is no objec- tion, that they are united in the same complaint, but the objec- tion is that they are not separately stated. They may be properly united, but improperly stated. I shall of course be understood to refer to causes of action which by § 167 may be united in the same complaint.

It was a misjoinder of causes of action, which was intended by subdivision 5 of § 144 to be a ground of demurrer to the complaint. What I mean by a misjoinder is, the union in one complaint of causes of action not allowed by § 167, as for ex- ample, a cause of action upon a contract with one for an injury to the person.

I am constrained, therefore, for the reasons stated, to differ

from the learned justice and able jurist to whose opinion I have last referred, and to hold that under the Code a demurrer will in no case lie for duplicity, and that the only mode for a party to avail himself of such objection is by motion to strike out or to compel the party to elect.

The foregoing views, it will be perceived, are only applicable to the present case, upon the assumption that the count demurred to, does, in fact, contain more than one cause of action. I am, nevertheless, entirely satisfied upon a deliberate examination of the count in question, and upon consideration of the authorities upon the subject, that it contains but one cause of action. The case made by it is purely of equitable cognizance. The object is to have a written contract reformed on the ground that, as alleged, a material part of the agreement was by mistake omitted, and when so reformed and made to express the agreement intended by the parties to it, to have it enforced against the defendant, as it shall stand reformed.

That such a case, when properly established by evidence, is a proper subject of equitable jurisdiction, is now well settled. (*Story's Eq. Jur.* § 157 to 161 inclusive ;) Gillespie agt. Moon, (2 *Johns. Ch. R.* 585 ;) Keisselbrack agt. Livingston, (4 *Johns. Ch. R.* 144.) It was proper for the plaintiff to invoke the equitable power of the court to correct the mistake in the written contract, and in the same count or statement to allege the violation by the defendant of the actual agreement, and then demand judgment for such relief as his case, when proved, would entitle him. On the hypothesis of such mistake, it was the only way he could frame his case so as to entitle himself to full relief. It is true the ultimate relief he needs, upon his own showing, is payment for the pelts delivered at the price agreed upon. But this he may not be, and probably is not entitled to, by virtue of the agreement as reduced to writing, which at law would be conclusive upon the parties, whatever the previous agreement was between them, and which they intended to have embodied in the writing, until it is reformed, so as to express the true agreement of the parties. Admitting that the plaintiff could recover, aside from the contract, for the pelts actually

delivered by the plaintiff, and received by the defendant, still he could not demand the contract price, although it might be his interest to do so, without showing performance on his part, which he could not do, as the contract now stands written, provided he has availed himself of the reservation or exception, which he alleges was a part of the agreement as made, and which was omitted by mistake to be inserted in the agreement, as reduced to writing.

Having presented a case of equity jurisdiction exclusively with a view to the reformation of the written agreement, it is no objection to the practical relief which he seeks, that it could be given in a court of law or according to the principles of the common law, upon the contract after it shall be reformed. It would be a reproach to the administration of justice to turn the party over to another tribunal, or to another form of action in the same tribunal, to obtain the relief, which he was obliged to appeal to its equitable jurisdiction in order to be put in a condition to ask for. The rule, with respect to a court of equity is, that the jurisdiction, having once attached, it shall be made effectual for the purposes of complete relief. (*Story Eq. Jur.* § 64, *k. and* 65.)

I am accordingly of the opinion that the plaintiff should have judgment on the demurrer, unless the defendant pays costs and answers the count demurred to in twenty days.